UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

United States of America,            Case No. 17-cr-0301 (WMW/DTS)

                Plaintiff,

     v.                           **ORDER ON MOTIONS IN LIMINE**

Hakeem Malik Dontae Flax (4),

                Defendant.

---

This matter is before the Court on Plaintiff United States of America's two motions in limine, (Dkts. 159, 170),[1] and Defendant Hakeem Malik Dontae Flax's eleven motions in limine. (Dkts. 171-80, 194). The Court addresses each motion in turn.

### I.     Government's Motion to Preclude Reference to Punishment

The government filed an unopposed motion to preclude Flax from making any reference to the punishment that he may receive if convicted. (Dkt. 159.) Only relevant evidence is admissible. Fed. R. Evid. 402. The potential punishment Flax may face if convicted is not relevant because it has no tendency to make a fact of consequence as to his guilt any more or less probable. *See* Fed. R. Evid. 401. Accordingly, the government's motion to preclude references to Flax's potential punishment is granted.

### II.    Government's Motion to Preclude Reference to Hearsay Statements

The government also moves to preclude Flax or his counsel from referring to hearsay statements in the presence of the jury. But the government does not identify any

---

[1]     The government's two motions contain a total of five individual requests.

specific statements that it disputes. (Dkt. 159.) The doctrine of judicial ripeness "safeguards against judicial review of hypothetical or speculative disagreements." *Neb. Pub. Power Dist. v. MidAmerican Energy Co.*, 234 F.3d 1032, 1038 (8th Cir. 2000). Here, the Court is left to speculate as to the contents and nature of any potential hearsay statements. Because this issue is not ripe for a decision by the Court, the government's motion is denied as premature.

### III. Motions Regarding Prior Bad Acts Evidence

The parties filed opposing motions addressing two prior bad acts. First, the government seeks to admit, and Flax seeks to exclude, evidence that Flax and co-defendant Domonick Deshay Wright were found in a car with firearms on January 13, 2007. (Dkts. 170, 172.) In addition, the government seeks to admit, and Flax seeks to exclude, evidence that Flax previously pleaded guilty to witness tampering on behalf of the 1-9 gang. (Dkts. 170, 173.)

Rule 404(b) prohibits the introduction of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence may be admissible "for another purpose, such as proving . . . intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.*, 404(b)(2). Evidence is admissible under Rule 404(b) when it is (1) relevant to a material issue raised at trial, (2) similar in kind and close in time to the crime charged, (3) supported by sufficient evidence to support a finding by a jury that the defendant committed the other act, and

(4) not so prejudicial that it substantially outweighs its probative value. *United States v. Johnson*, 439 F.3d 947, 952 (8th Cir. 2006).

### A. Firearms

The first prior bad act involves an event from January 13, 2007, when Flax and co-defendant Wright allegedly occupied a car that contained firearms. The government moves to admit this evidence to show Flax's knowledge of firearms and his opportunity to possess firearms and coordinate with Wright. Flax argues that this evidence should not be admitted for the following four reasons. It is not relevant because possession of firearms is not a material issue, the event occurred too far in the past, the sufficiency of the evidence is unknown at this time, and the evidence has low probative value.

To be admissible under Rule 404(b), evidence must "be supported by sufficient evidence to support a finding by a jury that the defendant committed the other act." *Id.* The government asserts that an officer will relay his observations of the January 13, 2007 incident. Flax argues that the sufficiency of such testimony "remains to be seen." Because the government has not offered the details of the officer's testimony or any other context for this evidence, the Court can only speculate as to its sufficiency. This issue is not ripe for decision at this point in the proceedings.

Accordingly, both the government's motion and Flax's motion are denied as premature as to this evidence.

### B. Witness Tampering

The second disputed bad act is Flax's December 20, 2012 conviction of witness tampering on behalf of a 1-9 gang member. The government contends that this evidence

helps to establish the conspiracy's existence and Flax's motivation to take actions in support of the conspiracy. Flax argues that the witness-tampering conviction is not relevant or similar in kind to the instant offense because the witness-tampering conviction did not involve a conspiracy to distribute drugs or possess firearms.

To be admissible, evidence of prior bad acts must be relevant to the offense charged. *Id.* Count 1 of the Indictment alleges that Flax conspired with members of the 1-9 gang to possess firearms in furtherance of a drug trafficking crime. Flax's witness-tampering conviction tends to show that a conspiracy existed and that he has taken actions on behalf of the conspiracy. Such evidence is relevant to whether Flax voluntarily and knowingly entered into the alleged agreement with members of the 1-9 gang.

The witness-tampering conviction also satisfies the other 404(b) requirements. The evidence is similar to the charged offense because it relates to Flax's actions on behalf of the 1-9 gang, the same gang whose members the government alleges Flax conspired with here. And the 2012 conviction is not too remote in time. When a defendant challenges the government's contention that he was involved in a conspiracy to distribute drugs, as Flax does, a prior conviction that occurred eleven years in the past is not too remote, especially when the prior conviction implicates some of the same people. *See United States v. Hickman*, 764 F.3d 918, 924 (8th Cir. 2014). As to the sufficiency of the evidence, Flax pleaded guilty to witness tampering in open court. His statements were made under oath and on the record. Finally, the conviction is not unduly prejudicial because witness tampering is not a violent crime. *Cf. United States v. Parker*, 871 F.3d 590, 599 (8th Cir. 2017) (determining that evidence that linked a defendant to a conspiracy but "did not

4

unduly imply that [the defendant] actually took part in violent [acts]" was not unduly prejudicial).

For these reasons, the government's motion to admit evidence relating to Flax's 2012 conviction of witness tampering is granted and Flax's motion to exclude evidence of that conviction is denied.

**IV. Government's Motion to Impeach Defendant with Evidence of Prior Convictions**

The government seeks to admit Flax's prior felony convictions for the limited purpose of impeaching his credibility if he testifies. (Dkt. 170.) Flax does not oppose this motion. When a defendant in a criminal case testifies as a witness, evidence of the defendant's past conviction that was punishable by imprisonment for more than one year "must be admitted . . . if the probative value of the evidence outweighs its prejudicial effect" to the defendant. Fed. R. Evid. 609(a)(1)(B). Because the government does not articulate which convictions it seeks to proffer, nor is it clear that Flax intends to testify, this matter is not ripe for a decision.

The government's motion is denied as premature.

**V. Flax's Motion to Preclude Reference to Shane Webb's Death**

Flax moves to exclude evidence that Shane Webb died of a gunshot wound on August 5, 2017.[2] (Dkt. 171.) This evidence is irrelevant, Flax argues, because the government need only prove that Flax *discharged* a firearm. The government counters that

---

[2] At the February 5, 2019 pretrial hearing, Flax's counsel clarified that Flax objects to the introduction of evidence that Webb was shot and killed, but he does *not* object to evidence establishing that Flax and Webb exchanged gunfire.

5

this evidence is relevant to all three charges against Flax: conspiracy to possess firearms in furtherance of a drug trafficking crime, conspiracy to distribute heroin, and discharge of a firearm in furtherance of a drug trafficking crime.

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Fed. R. Evid. 401.

Count 13 charges Flax with discharging a firearm in furtherance of a drug trafficking crime. Evidence that Webb was shot has a tendency to make it more probable that a firearm was discharged, which is a fact of consequence for Count 13. Moreover, the government also must establish that Flax discharged the firearm *in furtherance* of a drug trafficking crime. Evidence tending to show that a rival of the 1-9 gang was killed during this interaction increases the likelihood that the discharge of the firearm was in furtherance of the alleged conspiracy involving 1-9 gang members.

For these reasons, Flax's motion is denied. To the extent that Flax seeks to raise Rule 403 objections to this evidence, the Court reserves a ruling on any Rule 403 objection for trial.

## VI. Flax's Motion to Exclude Evidence of Flight

Flax moves to exclude evidence of his flight from law enforcement officers on August 31, 2017. (Dkt. 174.)

Whether evidence of a defendant's flight may be probative of a defendant's consciousness of guilt, and therefore admissible, "depends upon the degree of confidence with which four inferences can be drawn: (1) from the defendant's behavior to flight;

6

(2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Peltier*, 585 F.2d 314, 323 (8th Cir. 1978) (internal quotation marks omitted). Courts must "carefully consider whether there are a sufficient number of evidentiary manifestations to support these inferences." *United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir. 1991). Evidence that tends to support the third inference includes a defendant's full awareness of the charges against him and the absence of other offenses that could explain the defendant's flight. *See id.* at 1262.

Flax contends that there is insufficient evidence to support the third inference. Flax claims that, when he was initially arrested and questioned on August 7, 2017, law enforcement officers did not mention a heroin conspiracy. For this reason, Flax asserts his flight cannot be construed as consciousness of guilt of drug trafficking. The government counters that a jury could reasonably conclude that Flax "fled from police because he was conscious of his own guilt in the shooting." Without the benefit of additional details and context, the Court reserves a ruling on whether there is sufficient evidence to support the third inference. *See id.* at 1261.

Accordingly, Flax's motion to exclude evidence of flight is denied as premature.

### VII. Flax's Motion to Exclude Evidence of Drug Trafficking and Gun Possession by Co-Defendants

Flax also moves to exclude evidence of his co-defendants' drug trafficking, (Dkt. 175), and gun possession, (Dkt. 176), on the grounds that this evidence is irrelevant unless

the government establishes that Flax was involved in the conspiracy. The government represents to the Court that it intends to establish Flax's involvement in a conspiracy. But at the February 5, 2019 pretrial hearing, the parties agreed that this issue is not ripe for a decision at this time. The Court concurs.

For this reason, Flax's motions are denied as premature.

### VIII. Flax's Motion to Exclude Expert Testimony

Flax moves to exclude expert testimony that does not satisfy the requirements of *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). (Dkt. 177.) But Flax does not identify the expert or any particular testimony that he challenges. The parties agreed at the pretrial hearing, as this Court concludes, that this matter is not ripe for a decision.

Accordingly, Flax's motion is denied as premature.

### IX. Flax's Motion to Sequester Witnesses

Flax also seeks a Court order requiring the sequestration of witnesses. (Dkt. 178.) The government opposes this motion only to the extent that the motion concerns one of the government's task force officers. The government asserts that it is government policy for a case agent, such as Task Force Officer Adam Lepinski, to be present when witnesses testify.

When a party requests the sequestration of witnesses, "the court must order witnesses excluded so that they cannot hear other witness' testimony," subject to certain exceptions. Fed. R. Evid. 615. One exception is that a district court may exercise its discretion and exclude an investigative agent from the order sequestering witnesses. *See United States v. Woody*, 588 F.2d 1212, 1213 (8th Cir. 1978) (explaining that the legislative

history of the Federal Rules of Evidence indicates that the exceptions in Rule 615 were intended to encompass government investigative agents). Here, there is no good reason to require the government to depart from its established policy and sequester Officer Lepinski.

Accordingly, Flax's motion is granted in part and denied in part. The Court orders all witnesses other than Officer Lepinski to be sequestered during trial.

X. **Flax's Motion to Exclude Inflammatory Evidence**

Flax moves to exclude "inflammatory" evidence—including tattoos, alleged nicknames, and his custody status—under Rule 403. (Dkt. 179.) The government represents to the Court that it will not offer evidence of Flax's custody status. In all other respects, the government opposes this motion.

The Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The Eighth Circuit has found that evidence of tattoos is relevant to gang membership. *See United States v. Gaines*, 859 F.3d 1128, 1131-32 (8th Cir. 2017). Evidence of gang membership, in turn, is relevant to an offense when "the issues in the case concern the mere fact of a defendant's gang membership" or when such evidence "is generally an unavoidable incident of presenting other permissible evidence." *Id.* at 1131 (internal quotation marks omitted).

Here, the government intends to offer evidence of Flax's tattoos that relate to the 1-9 gang. Flax's alleged membership in the 1-9 gang is relevant to the conspiracies charged in the Indictment. And the existence of tattoos on a defendant is not shocking

9

enough to constitute unfair prejudice. As such, the government's proffered photograph of Flax's tattoos is admissible.

The same rationale applies to evidence of nicknames. Nicknames can be probative of membership in a gang. Here, membership in the 1-9 gang and familiarity with 1-9 gang members are relevant to the charged conspiracy. Moreover, as the government explains, nicknames are largely unavoidable because some of the witnesses know certain individuals only by their nicknames. But without additional information about the nicknames or other contextual information, a blanket ruling on whether the probative value of this evidence is substantially outweighed by the danger of unfair prejudice is premature at this stage in the proceedings.

Accordingly, Flax's motion is granted as to his custody status and denied as to evidence depicting his tattoos. The remainder of the motion is denied as premature.

**XI.    Flax's Motion to Exclude Evidence Portraying Gang Themes**

Flax moves to exclude social media posts depicting both Flax's and Webb's association with gang members. (Dkt. 180.) Flax contends that this evidence is irrelevant to establishing the elements of the offenses with which he is charged. The government counters that these posts are relevant to establishing Flax's involvement in the conspiracy and Webb's membership in a rival gang. Currently, the Court is unaware of how the government seeks to use this evidence or the context in which the evidence will be presented if admitted. Moreover, any rulings during trial on evidence implicating Webb may, in turn, impact the admissibility of these proffered exhibits. As this motion is not ripe for a decision, Flax's motion is denied as premature.

## XII. Flax's Motion to Exclude Prior Statements

Flax moves to exclude four statements that the government alleges Flax made. Flax argues that the evidence is highly prejudicial and has no probative value. (Dkt. 194.) These alleged statements include: (1) a statement to a police sergeant on March 5, 2008 that Flax's "group" was the "1-9ers/Queensblock Gang," (2) a statement to an officer on December 27, 2010, telling her to "look at my tattoos, bitches, I murder people," (3) a statement to an officer on August 4, 2017, informing him "I'm the one nines," and (4) a conversation with that same officer on August 5, 2017, in which Flax mentioned that he was looking for the "Ops." At the pretrial hearing, the government represented to the Court that it no longer seeks to admit the December 27, 2010 statement. As such, the parties dispute the admissibility of only the first, third and fourth statements described above.

Under Rule 403, gang-related evidence may be "probative of [a defendant's] motive to possess a gun even if that alleged motive derived from his gang involvement." *Gaines*, 859 F.3d at 1132 (internal quotation marks omitted). And although a defendant cannot be convicted because of his association with a group, evidence of a defendant's association with a group is admissible "where the association establishes motive or opportunity to commit the crime." *Parker*, 871 F.3d at 598 (internal quotation marks omitted). Gang-related evidence also may be needed to disprove a defendant's "mere-presence" defense and to "establish conspiracy or to rebut codefendants' innocent explanations of their relationships with one another." *Id.* (internal quotation marks omitted). When gang-related evidence fits any of these classifications, the probative value of the evidence ordinarily is

not substantially outweighed by the danger of unfair prejudice. *See id.* at 598-99; *Gaines*, 859 F.3d at 1131-32.

The disputed statements tend to show that Flax was aware of and involved with the 1-9 gang. This evidence is probative of whether Flax knowingly and voluntarily entered into the alleged conspiracy with other 1-9 gang members and whether Flax had a reason to possess the gun that was later discharged. The disputed statements are neither lewd nor inflammatory. The probative value of this evidence is not substantially outweighed by a danger of unfair prejudice.

Accordingly, Flax's motion to exclude the first, third, and fourth statements is denied.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. The government's First Motion in Limine, (Dkt. 159), is **GRANTED IN PART** as to references to punishment and **DENIED IN PART** as premature as to references to hearsay statements.

2. The government's Second Motion in Limine, (Dkt. 170), is **DENIED IN PART** as premature as to prior bad acts evidence of gun possession, **GRANTED IN PART** as to Flax's prior witness-tampering conviction, and **DENIED IN PART** as premature as to impeachment evidence.

3. Flax's First Motion in Limine, (Dkt. 171), is **DENIED**.

4. Flax's Second Motion in Limine, (Dkt. 172), is **DENIED** as premature.

5. Flax's Third Motion in Limine, (Dkt. 173), is **DENIED**.

6. Flax's Fourth Motion in Limine, (Dkt. 174), is **DENIED** as premature.

7. Flax's Fifth Motion in Limine, (Dkt. 175), is **DENIED** as premature.

8. Flax's Sixth Motion in Limine, (Dkt. 176), is **DENIED** as premature.

9. Flax's Seventh Motion in Limine, (Dkt. 177), is **DENIED** as premature.

10. Flax's Eighth Motion in Limine, (Dkt. 178), is **DENIED IN PART** as to Officer Lepinski and **GRANTED IN PART** as to all other witnesses. All witnesses other than Officer Lepinski must be sequestered during the upcoming trial.

11. Flax's Ninth Motion in Limine, (Dkt. 179), is **GRANTED IN PART** as to Flax's custody status and **DENIED IN PART** as to evidence depicting Flax's tattoos. The remainder of the motion is **DENIED** as premature.

12. Flax's Tenth Motion in Limine, (Dkt. 180), is **DENIED** as premature.

13. Flax's Eleventh Motion in Limine, (Dkt. 194), is **DENIED**.


Dated: February 9, 2019

s/Wilhelmina M. Wright  
Wilhelmina M. Wright  
United States District Judge